# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO SECURITIES, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LJM INVESTMENT FUND, L.P. and LJM PARTNERS, LTD,<br><br>　　　　　　　　　　Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff, Wells Fargo Securities, LLC, complains against defendants LJM Investment Fund, L.P. and LJM Partners, LTD as follows:

### I. Parties

1. Plaintiff Wells Fargo Securities, LLC ("Wells Fargo Securities") is a Delaware limited liability company, with its principal place of business in North Carolina. The owner and sole member of Wells Fargo Securities is EVEREN Capital Corporation, which is a Delaware corporation with its principal place of business in North Carolina.

2. Defendant LJM Investment Fund, L.P. ("LJM") is a Delaware limited partnership, with its principal place of business in Chicago, Illinois.

3. Defendant LJM Partners, LTD ("LJM Partners") is an Illinois corporation with its principal place of business in Illinois. The sole owner and chief executive officer of LJM Partners is Anthony J. Caine ("Caine").

4. The general partner of LJM is LJM Partners. The limited partners and sole beneficial owners of LJM are three charitable remainder trusts: Anthony J. Caine I Charitable

1

Remainder Trust, Anthony J. Caine II Charitable Remainder Trust, and Anthony J. Caine III Charitable Remainder Trust. Upon information and belief, (a) the trustee for each of these trusts is Caine, a resident of Colorado; (b) Caine formed the three trusts and is their sole income beneficiary; and (c) each of the three trusts has an "independent special trustee," Caroline B. Pearce, who also is a resident of Colorado.

## II. Jurisdiction and Venue

5. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs and the action is between citizens of different States. (For diversity purposes, the citizenship of a limited partnership depends on the citizenship of its partners, not its place of registration.)

6. Personal jurisdiction and venue are proper in this district because LJM consented to jurisdiction in the "federal courts in the Southern District of New York." Ex. 1 (Futures and Cleared Swaps Agreement) ¶ 30.

## III. Background

7. Plaintiff Wells Fargo Securities is registered with the U.S. Commodity Futures Trading Commission ("CFTC") as a Futures Commission Merchant ("FCM"). Wells Fargo Securities is a clearing FCM, and as such is a member of several exchanges, including the Chicago Mercantile Exchange ("CME"). As a member of the CME, Wells Fargo Securities guarantees the performance of its customers to the CME.

8. Defendant LJM is a commodity pool (operating pursuant to CFTC regulation 4.7), and its general partner, defendant LJM Partners, is a commodity pool operator.

9. LJM traded derivatives on the CME, with Wells Fargo Securities as its clearing FCM and agent. As LJM's clearing FCM and agent, Wells Fargo Securities was responsible to

the CME to pay margin for LJM if the value of LJM's positions went down and to cover LJM's margin requirements and losses. Pursuant to a contract (see paragraph 11 below), LJM in turn was required to pay Wells Fargo Securities for any such margin payments and losses.

10. In early February 2018, LJM's derivatives trading at the CME resulted in very large losses, and Wells Fargo Securities was required to pay the CME more than $16 million to cover LJM's margin and losses. In violation of its contractual obligations, LJM failed to make contractually required margin payments to Wells Fargo Securities to cover the losses. This lawsuit seeks to recover for the damages Wells Fargo Securities suffered as a result of LJM's breach of contract.

**IV.   The Agreement**

11. As of February 26, 2015, LJM and Wells Fargo Securities entered into a Futures and Cleared Swaps Agreement (Ex. 1), which was amended as of June 2, 2015 (Ex. 2). Exhibits 1 and 2 together are referred to as the "Agreement." The Agreement "sets forth the terms and conditions pursuant to which Wells Fargo Securities … acting as a futures commission merchant … and LJM … have agreed shall govern the purchase, sale, execution, clearing and carrying of derivatives products cleared through [Wells Fargo Securities]." Agreement 1.

12. Among other things, the Agreement provides as follows:

(a)   All of the derivatives transactions Wells Fargo Securities executed for LJM "are being entered into *for the account and risk of [LJM]*" (*id.* ¶ 2 (emphasis added));

(b)   Wells Fargo Securities "is acting as agent and not principal in the execution and/or clearing of Derivatives" (*id.* );

(c) LJM is required to maintain adequate margin in its account with Wells Fargo Securities, which means that "at all times [it must] … maintain sufficient cash … and such other collateral as [Wells Fargo Securities] may deem acceptable, in its Account … plus additional amounts as [Wells Fargo Securities] may require from time to time" (*id*. ¶ 10);

(d) Wells Fargo Securities may demand a margin deposit or payment at any time, and "all deposits or delivery of Margin by [LJM to Wells Fargo Securities] shall be made by … the close of that business day" or if the margin demand is made after 12:00 noon EST, "by the close of business on the next succeeding business day" (*id*.);

(e) "If any Exchange or Clearing Organization makes an intraday call on [Wells Fargo Securities] on a business day to deliver Margin and [Wells Fargo Securities] makes a corresponding demand on [LJM], [LJM] agrees it will deliver the required Margin to [Wells Fargo Securities] promptly and in no event later than the close of business on such business day" (*id*.); and

(f) "[T]o the extent that Wells Fargo Securities accepts such Derivatives for execution or clearing, *[LJM] and not [Wells Fargo Securities] is responsible and liable for any losses arising from Derivatives entered into in [LJM's] Account*. *Id*. ¶ 2 (emphasis added).

13. The Agreement further provides that if LJM "fails to comply with any provision of, or perform any obligation under, this Agreement, including, but not limited to, where [LJM] fails to deposit or maintain required Margin, … or fails to make any other payments required

4

hereunder," or "defaults on any obligations to Wells Fargo in respect of any transaction or agreement," that constitutes an "Event of Default." *Id.* ¶ 18 (a), (b).

14. The Agreement provides that the remedies for an Event of Default include, among other things, the right to treat all of LJM's obligations to Wells Fargo Securities "as immediately due and payable," and the right to take any actions it "deems necessary or appropriate," "all without additional demand for Margin and without notice or advertisement." *Id.* ¶ 19 (c), (h).

15. The Agreement also provides that LJM "shall be liable for the payment of any deficiency remaining in the Account after such actions are taken by Wells Fargo, together with interest thereon and all costs relating to actions taken by Wells Fargo (including reasonable attorneys' fees), and any fees and expenses owed in the Account." *Id.* ¶ 19(h).

## IV. The Breach of Contract

16. In the first week of February 2018, LJM's trading resulted in heavy losses in the derivatives market.

17. On February 6 and 7, 2018, as the losses on LJM's positions became apparent, Wells Fargo Securities made repeated requests to LJM for margin deposits, which LJM failed to honor.

18. On February 8, 2018, after LJM closed out its positions, Wells Fargo demanded that LJM deposit $16,367,911.62 by the close of business that day to cover the losses LJM had sustained in its account. Exs. 3, 4.

19. Also on February 8, 2018, in light of Wells Fargo Securities' guarantee of LJM's performance, the CME debited $16,367,911.62 from Well Fargo Securities' account in order to cover the losses in LJM's account.

20. On February 26, 2018, Wells Fargo Securities again demanded immediate payment of $16,367,911.62. Ex. 5.

21. Notwithstanding Wells Fargo Securities' requests for payment to cover insufficient margin and, ultimately, the losses in the account, LJM has *not* made the required payments.

22. LJM's failure to pay the required margin and for the losses in its account is a clear violation of its obligations under the Agreement.

23. As a consequence of LJM's failure to honor its contractual obligations, Wells Fargo Securities has suffered damages of at least $16,367,911.62, exclusive of interest, fees, and costs. Ex. 6.

24. Upon information and belief, LJM is insolvent or otherwise unable to pay all of its obligations.

## COUNT I
## BREACH OF CONTRACT

25. Wells Fargo Securities incorporates the allegations in paragraphs 1-24 as part of Count I.

26. The Agreement is a valid, binding contract.

27. Wells Fargo Securities fully performed its obligations under the Agreement.

28. LJM breached its obligations under the Agreement to deposit the required margin when demanded and to pay for the losses incurred in its account.

29. As a consequence of LJM's breach of the Agreement, Wells Fargo Securities has been damaged in the amount of at least $16,367,911.62, exclusive of interest, fees, and costs.

30. As the general partner of LJM, LJM Partners is personally liable for LJM's debts because, on information and belief, LJM is insolvent or otherwise unable to pay all of its obligations.

## RELIEF REQUESTED

Wherefore, Wells Fargo Securities requests that this Court award to it and against the defendants LJM and LJM Partners jointly

    (a)    damages in an amount not less than $16,367,911.62,

    (b)    attorneys fees and costs, and

    (c)    any and all additional relief as the Court may determine in its discretion to be just and proper.

Dated: March 6, 2018

                                                   Respectfully submitted,

                                                   **WELLS FARGO SECURITIES, LLC**

                                                   By:  _/s/*Nina N. Shah*_____

Nina N. Shah (NY Bar # 5329412)                        One Of Its Attorneys
MAYER BROWN LLP
1221 6th Avenue
New York, NY  10020
(212) 506-2500
nnshah@mayerbrown.com

Howard J. Roin (IL Bar # 3122493) (*PRO HAC VICE admission to be requested*)
Thomas S. Kiriakos (IL Bar # 6184699) (*PRO HAC VICE admission to be requested*)
Peter B. Baumhart (IL Bar # 6320277) (*PRO HAC VICE admission to be requested*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
(312) 782-0600
hroin@mayerbrown.com
tkiriakos@mayerbrown.com
pbaumhart@mayerbrown.com

*Attorneys for Plaintiff*