UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WELLS FARGO SECURITIES, LLC,

       Plaintiff,

  -v-                                                        No.  18 CV 2020-LTS-HBP

LJM INVESTMENT FUND, L.P. and LJM
PARTNERS, LTD.,

       Defendants.

-------------------------------------------------------x

LJM INVESTMENT FUND, L.P., LJM
MASTER TRADING FUND, L.P., LJM
OFFSHORE FUND, LTD., AND PFC-LJM
PRESERVATION AND GROWTH FUND,
L.P.,

       Counterclaimants,

  -v-

WELLS FARGO SECURITIES, LLC,

       Counter-defendant.

-------------------------------------------------------x

MEMORANDUM OPINION & ORDER

       Plaintiff Wells Fargo Securities, LLC ("WFS") brings this action for breach of contract against Defendants LJM Investment Fund, L.P. and LJM Partners, Ltd.  (Docket entry no. 1.)  LJM Investment Fund, L.P. and its affiliates LJM Master Trading Fund, L.P., LJM Offshore Fund, Ltd., and PFC-LJM Preservation and Growth Fund, L.P. (collectively, "LJM") assert counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and negligence.  (Docket entry no. 26, the "Countercl.")  On

September 11, 2018, United States District Judge Katherine B. Forrest granted WFS's motion to dismiss LJM's counterclaims, dismissing LJM's counterclaims with prejudice.  <u>LJM Investment Fund, L.P. v. Wells Fargo Securities, LLC</u>, No. 18-cv-2020 (KBF), 2018 WL 4335512 (Sept. 11, 2018) (the "September Opinion").  The case has been reassigned to the undersigned.  Now before the Court is LJM's motion for reconsideration of the September Opinion or, in the alternative, entry of a partial final judgment and a stay pending appeal.  (Docket entry no. 50.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332.  The Court has reviewed carefully the parties' submissions and, for the reasons stated below, LJM's motion for reconsideration is granted in part and denied in part, and LJM's motion for entry of a partial final judgment and a stay is denied.

BACKGROUND

The Court assumes the parties' familiarity with the background of this case, which is laid out in detail in the September Opinion.  The September Opinion summarized the relevant factual allegations as follows:

> On February 26, 2015, WFS entered into [a Futures and Cleared Swaps] Agreement [(docket entry no. 50-4, the "Agreement" or "Agmt.")] with LJM whereby WFS, acting as a futures commission merchant ("FCM"), provided certain clearing and execution services to LJM, which traded options contracts ("Derivatives") on the [Chicago Mercantile] Exchange [(the "Exchange")]. (Countercl. ¶ 1; Agmt. ¶ 1.)  The Agreement, which includes an Amendment executed [on] June 2, 2015,[1] authorizes WFS to execute Derivatives trades "for the account and risk of [LJM]."  (Agmt. § 2.) . . . .
>
> In connection with WFS' role as an FCM, the Agreement requires LJM to maintain sufficient cash and other liquid assets ("Margin") as bond to insure its trades on the Exchange.  (<u>Id.</u> § 10.)  WFS may demand Margin payments from LJM at any time, and LJM must make payment within the [transfer] deadlines set forth in Section 10.  (<u>See</u> <u>id.</u>)

---

[1]     Unless otherwise specified, references and citations to the "Agreement" are to the final form of the Agreement, which incorporates the June 2 Amendment.

To guarantee payment of Margin, Section 13 of the Agreement grants WFS security interests in certain of LJM's assets, including Derivatives traded on the Exchange (collectively, "Collateral").  (Id. § 13.)  With respect to such Collateral, LJM has also agreed to the following terms:

> (d) [LJM] agrees that it will promptly execute and deliver to WFS all documents and instruments, and take such further actions, reasonably requested by WFS from time to time to protect, preserve and perfect WFS' rights and interests in the Collateral. . . .
>
> (e) Subject to any requirements under Applicable Law, [LJM] hereby grants Wells Fargo the right to borrow, pledge, repledge, hypothecate, rehypothecate, loan or invest any of the Collateral, including investing such Collateral in any instrument authorized under Applicable Law, in each case without notice to [LJM], and without any obligation to pay or to account to [LJM] for any interest, income or benefit that may be derived therefrom.

(Id. § 13(a), (d)-(e).)

In addition, the Agreement includes a detailed description of events which would constitute "default" by LJM.  Under Sections 18 and 19, an "event of default," such as "fail[ure] to deposit or maintain required Margin," would grant WFS the right to "close out, liquidate, terminate or net at such times as WFS deems appropriate, any or all open Derivatives and other positions (including Collateral) in [LJM's] Account."  (Agmt. §§ 18(a), 19(b).)

Finally, the Agreement sets forth the terms by which [] WFS or LJM may terminate the parties' business relationship.  According to Section 24, the "Agreement may be terminated at any time by [LJM] or WFS by written notice to the other."  (Id. § 24.)  Termination, however, "shall not relieve either party of any obligations in connection with any debit or credit balance or other liability or obligation incurred prior to such termination," and does not take effect until such liabilities are satisfied.  (Id.)

Two years after [the parties executed] the Agreement, on February 5, 2018, the options market on the Exchange experienced extreme and unusual instability—a "black swan" event which commentators have referred to as "Volatility Black Monday" or "Vol-mageddon."  (Countercl. ¶ 15.)  LJM's portfolio, which was guaranteed by WFS, suffered significant losses.  (Id. ¶ 19.)  That evening, WFS sent LJM a position statement and [a] demand for "exorbitantly high margin deposits."  (Id. ¶ 21.)  According to LJM, WFS issued this demand even though it knew its analysis of LJM's portfolio was based on incomplete and incorrect information.  (Id. ¶ 21.)  LJM does not allege that it submitted payment according to WFS' demand.

> On the morning of February 6, WFS sent a letter terminating the Agreement as of right and directing LJM to "promptly close out or transfer any open positions in the account." ([docket entry no. 45-1,] Koral Decl. Ex. A.) WFS further directed LJM to liquidate its open positions with an immediate before-market sale of E-mini S&P 500 futures ("E-mini futures"), which LJM alleges it "never would have sold" under the circumstances. (Countercls. ¶ 23-24.) To ensure LJM's compliance, WFS sent two employees to LJM's offices to monitor and report on LJM's activities. (Id. ¶ 25.) By the end of the trading day, per WFS' instruction, LJM had completely unwound its portfolio, losing more than $266 million across all managed and affiliated funds. (Id. ¶ 29.) LJM alleges that these losses were approximately $115 million more than what LJM would have suffered had it applied its trading procedures rather than liquidate the Account. (Id. ¶ 29.)

(September Opinion at 2-5.)

In the September Opinion, Judge Forrest concluded that Section 24 of the Agreement entitled WFS to insist that LJM either "close out open positions in the Account or arrange for such open positions to be transferred to another FCM promptly." (Id. at 8.) To the extent that LJM argued that WFS breached the Agreement by not permitting LJM an opportunity to apply its own trading procedures or otherwise not promptly close its open positions, Judge Forrest found that there were no terms in the Agreement that granted LJM that right. (Id.) Even if LJM had some right to delay closing its accounts under the Agreement, Judge Forrest concluded, Sections 13(d) and 13(e) of the Agreement "provided ample authority for WFS to direct the sale of the E-mini futures" and "grant[ed] WFS broad authority to take unilateral action with respect to its Collateral—up to and including 'instructing LJM to conduct an immediate bulk sale of E-mini S&P 500 futures.'" (Id. at 9-10.) To the extent that Section 13(d) only authorized WFS to take actions "reasonably requested . . . to protect, preserve, and perfect WFS's rights and interest in the Collateral," Judge Forrest determined that, "given the 'extreme and unusual instability' in the options markets," the Court would not "second-guess the reasonableness of WFS' instruction." (Id. at 10.) And, even if WFS' sale of E-mini futures

was objectively unreasonable, Judge Forrest found, Section 13(e) "expressly authorizes WFS to invest LJM's Derivatives as it sees fit." (Id.)  Accordingly, Judge Forrest dismissed LJM's claim for breach of contract. (Id.)  Judge Forrest also dismissed LJM's remaining claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and negligence "as they duplicate LJM's claims for breach of contract." (Id. at 7 n.5.)

## DISCUSSION

A motion for reconsideration is not intended as "a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012).  Indeed, reconsideration is an "extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks omitted).  To warrant reconsideration, the moving party bears the heavy burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).[2]

As an initial matter, WFS argues that LJM's October 9, 2018, motion for reconsideration, which was filed 28 days after the September Opinion was issued, is untimely under Local Rule 6.3.  Local Rule 6.3 provides that "a notice of motion for reconsideration or

---

[2]   In connection with its motion, LJM proffers the Declaration of Carl Gilmore (docket entry no. 52), who purports to opine on the meaning of certain terms in the Agreement.  Because a motion for reconsideration "is not the proper avenue for the submission of new material," and Local Rule 6.3 prohibits the unauthorized submission of affidavits or declarations in connection with a motion for reconsideration, the Court disregards the Declaration for purposes of the instant motion practice.  See Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc., 106 F. Supp. 2d 519 (S.D.N.Y. 2000).

reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment." S.D.N.Y. Local Rule 6.3.  LJM argues that, notwithstanding Local Rule 6.3, its motion for reconsideration was still timely filed pursuant to Federal Rule of Civil Procedure 59(e), which provides that "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).

LJM's argument is unavailing because the September Opinion, which adjudicated only LJM's counterclaims, was not a final judgment within the meaning of the Federal Rules. See Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.")  Although Judge Forrest dismissed LJM's claims with prejudice, that dismissal with prejudice did not amount to an adjudication of all the claims, rights, or liabilities of all of the parties in the action.  Thus, LJM's motion for reconsideration can only be brought pursuant to Local Rule 6.3, and it is untimely under that rule.

In certain limited circumstances, courts have permitted untimely motions for reconsideration where there is a "compelling reason to ignore the time limit."  See Vincent v. Money Store, No. 03-civ-2876 (JGK), 2011 WL 4501325, at * 8 (S.D.N.Y. Sept. 29, 2011) (quoting Richman v. W.L. Gore & Assocs., Inc., 988 F. Supp. 753, 755 (S.D.N.Y. 1997)).  Here, the Court finds that the needs to correct clear error and prevent manifest injustice warrant consideration of LJM's otherwise untimely motion.  WFS has not demonstrated that

consideration of LJM's motion would result in any prejudice to WFS and, by addressing the issues presented in LJM's motion at this stage, the Court may promote the efficient management of the parties' dispute, conserve judicial resources, and obviate the need for further proceedings. Accordingly, the Court turns to LJM's four main arguments in favor of reconsideration.

Section 13 of the Agreement

First, LJM argues that the September Opinion improperly relied, sua sponte, on Section 13 of the Agreement when dismissing LJM's claim for breach of contract, even though neither party had argued that Section 13 was applicable.  LJM contends that Sections 13(d) and 13(e) of the Agreement, which pertain to the perfection of WFS' rights and interests in the Collateral, and WFS' right to borrow, pledge, loan, or invest the Collateral, did not provide WFS with unfettered authority to direct the sale of E-mini futures.  The Court agrees that Section 13 does not, on its face, authorize WFS to direct the liquidation of LJM's portfolio.  As LJM notes, such an expansive interpretation of Section 13 would render superfluous LJM's bargained-for rights in Sections 10, 18, 19, and 24 of the Agreement to make margin payments by certain transfer deadlines depending on when a margin call is made, to permit liquidation of its accounts only in the event of a default, and to close out or transfer its accounts to another FCM promptly upon termination.  To the extent that WFS exercised its rights under Section 13 of the Agreement when directing LJM to conduct an immediate bulk sale of E-mini futures, dismissal of LJM's counterclaim pursuant to Sections 13(d) or 13(e) would still be unwarranted at this stage because there remain factual questions as to whether WFS' actions under the circumstances were reasonable and whether they can properly be characterized as acts to "protect, preserve and perfect" WFS' rights and interests in the Collateral or to otherwise "borrow, pledge, repledge,

hypothecate, rehypothecate, loan, or invest" any of the Collateral.  Accordingly, the Court vacates the September Opinion insofar as it dismissed LJM's breach of contract counterclaim based upon Section 13 of the Agreement.

Characterization of E-Mini Futures

Next, LJM asserts that the September Opinion erroneously characterized E-mini futures as "open positions" in LJM's portfolio that were subject to liquidation on February 6, 2018, when in fact the E-mini futures transactions were new short positions that WFS compelled LJM to add to its portfolio.  LJM's argument is inconsistent with its counterclaim, which repeatedly characterizes E-mini futures as open positions that were a part of LJM's portfolio.  (See, e.g., Countercl. ¶ 23 ("Wells did not merely direct that LJM liquidate its open positions, but also prescribed the specific means of doing so.  In particular, Wells instructed LJM to conduct an immediate bulk sale of E-mini S&P 500 futures."); ¶ 30 (describing WFS' "forced liquidation of LJM's accounts"); ¶ 32 (same); ¶ 31 (alleging that, by the end of the day, "there remained no open positions in any of LJM's accounts").)  Nowhere in the counterclaim does LJM describe the E-mini futures transactions as new short sales that were added to LJM's portfolio, nor did LJM raise a similar argument in connection with WFS' motion to dismiss.  Because reconsideration is "not a vehicle for . . . presenting the case under new theories," Analytical Surveys, 684 F.3d at 52, and because LJM's argument finds no support in the language of its counterclaim, reconsideration of the September Opinion on this basis is not warranted.

Section 24 of the Agreement

Third, LJM contends that the September Opinion erroneously concluded that LJM had no right to delay closing its accounts under the Agreement, when in fact LJM had a right under Section 24 of the Agreement to either transfer or close out its open positions "promptly." While the September Opinion correctly concluded that Section 24 allows LJM to "either close out open positions in the Account or arrange for such open positions to be transferred to another FCM promptly," LJM's counterclaim does not plead plausibly that that LJM intended, on the morning of February 6, 2018, to promptly close out or transfer its open positions. The counterclaim alleges that WFS breached the Agreement by not "allowing LJM time to execute its well-conceived plan to contain its temporary paper losses until the market normalized" (Countercl. ¶ 2), not allowing LJM to "carr[y] out its well-practiced risk containment procedures" (id. ¶ 28), and not "permit[ting] [LJM] to manage their own book" (id. ¶ 41). These allegations are insufficient under Twombly to raise a plausible inference that LJM sought to close out open positions in the Account, or to arrange for those positions to be transferred promptly to another FCM, on February 6, 2018. However, because the arguments raised by LJM, if supported by proper factual allegations, may be sufficient to state a claim for breach of contract, and in light of the principles articulated by the Second Circuit in Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs. LLC, 797 F.3d 160 (2d Cir. 2015), the Court grants LJM leave to replead its counterclaim for breach of contract. Accordingly, the Court vacates the September Opinion insofar as it dismisses LJM's breach of contract counterclaim with prejudice and LJM may seek leave to replead that counterclaim.

Counterclaims for Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Negligence

        Relying primarily on the arguments raised in its opposition to WFS' motion to dismiss, LJM argues that it pled adequately its claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and negligence.  Because LJM has failed to show a legal or factual basis justifying reconsideration of the September Opinion's dismissal of these counterclaims, LJM's motion for reconsideration is denied to the extent that it seeks to reinstate those claims.

Motion for Entry of Partial Final Judgment and a Stay

        Federal Rule of Civil Procedure 54(b) authorizes entry of a partial final judgment as to one or more, but fewer than all, claims or parties when "(1) there are multiple claims or parties; (2) at least one claim or the rights and liabilities of at least one party has been finally determined; and (3) the court makes an express determination that there is no just reason for delay."  Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co., 769 F.3d 135, 140 (2d Cir. 2014) (internal citations omitted).  In light of the Court's determination that LJM may seek leave to replead its counterclaim for breach of contract, and because LJM's counterclaim overlaps with its affirmative defenses to WFS' complaint, the Court finds that the interests of judicial economy are not served by entry of a partial final judgment or a stay at this time.  Accordingly, LJM's requests for entry of a partial final judgment and a stay are denied.

CONCLUSION

For the foregoing reasons, LJM's motion for reconsideration is granted to the extent that it seeks vacatur of those portions of the September Opinion dismissing LJM's counterclaim for breach of contract.  Specifically, the Court vacates the discussion section on pages 8-11 of the Opinion (docket entry no. 47).  LJM's counterclaim for breach of contract remains dismissed for the reasons stated in this Memorandum Opinion and Order.  LJM's counterclaims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and negligence remain dismissed for the reasons stated in the September Opinion. LJM may move for leave to replead its counterclaim for breach of contract by **August 26, 2019**. Any such motion must comply with the Federal Rules of Civil Procedure, the Local Rules of this Court, and the Individual rules of practice of the undersigned, and must be accompanied by a proposed amended counterclaim, a blackline of that proposed counterclaim, and a memorandum of law.  If LJM does not file a timely motion for leave to amend, the dismissal of its counterclaims will be with prejudice.  LJM's motion for reconsideration is denied in all other respects, and LJM's motion for entry of a partial final judgment or a stay is also denied.  This Memorandum Opinion and Order resolves docket entry no. 50.  This action remains referred to Magistrate Judge Pitman for general pre-trial management.

SO ORDERED.

Dated: New York, New York
August 5, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge