UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO SECURITIES, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>-v-<br><br>LJM INVESTMENT FUND, L.P. and LJM PARTNERS, LTD,<br><br>　　　　　　　　　　Defendants.<br><br>LJM INVESTMENT FUND, L.P., LJM MASTER TRADING FUND, L.P., LJM OFFSHORE FUND, LTD., and PFC-LJM PRESERVATIONS AND GROWTH FUND, L.P.,<br><br>　　　　　　　　　　Counterclaimants,<br><br>-v-<br><br>WELLS FARGO SECURITIES, LLC,<br><br>　　　　　　　　　　Counterclaim-Defendant. | CIVIL ACTION NO.: 18 Civ. 2020 (LTS) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is the letter-motion of Defendants-Counterclaimants LJM Investment Fund, L.P., et al. ("LJM") to compel Plaintiff-Counterclaim Defendant Wells Fargo Securities, LLC ("Wells Fargo") to remove redactions from certain documents Wells Fargo has previously produced. (ECF No. 158 (the "Motion")). Wells Fargo opposes the Motion. (ECF No. 161). On February 18, 2022, the Court heard oral argument from the parties. (ECF Nos. 157; 163).

For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

I.     BACKGROUND

The background of this action is set forth in the prior decisions of Chief Judge Laura Taylor Swain granting in part and denying in part LJM's motion for reconsideration, Wells Fargo Securities, LLC v. LJM Investment Fund, L.P., No. 18 Civ. 2020 (LTS) (HBP), 2019 WL 3553290 (S.D.N.Y. Aug. 5, 2019) ("Wells Fargo II"),[1] and granting LJM's motion for leave to replead its breach of contract counterclaim.  Wells Fargo Securities, LLC v. LJM Investment Fund, L.P., No. 18 Civ. 2020 (LTS) (SLC), 2021 WL 1198931 (S.D.N.Y. Mar. 30, 2021) (the "Wells Fargo III").  The Court incorporates that background by reference.

As is relevant to the Motion, LJM has asserted a breach of contract counterclaim alleging that Wells Fargo "recklessly coerced [LJM] into wholly liquidating their portfolios in a commercially unreasonable manner" in breach of the parties' Futures and Cleared Swaps Agreement (the "Agreement").  (ECF No. 116 ¶ 66).  See Wells Fargo I, 2018 WL 4335512, at *1; Wells Fargo II, 2019 WL 3553290, at *4 (in granting LJM's motion for reconsideration, noting that "there remain factual questions as to whether WFS' actions under the circumstances were reasonable").  Thus, whether Wells Fargo's actions were "commercially reasonable" is a material issue as to LJM's breach of contract counterclaim.  (ECF No. 117 at 4 (LJM's counsel stating, "We expect and understand that one of [Wells Fargo's] defenses is going to be that they acted

---

[1] The decision of the Honorable Laura Taylor Swain in Wells Fargo II granted in part and denied in part LJM's motion for reconsideration of the Honorable Katherine B. Forrest's decision granting Wells Fargo's motion to dismiss LJM's counterclaims.  See Wells Fargo Sec., LLC v. LJM Inv. Fund, L.P., No. 18 Civ. 2020 (KBF), 2018 WL 4335512 (Sept. 11, 2018) ("Wells Fargo I").

reasonably in accordance with commercial standards and pursuant to their own standard procedures. And so the question is, is that true.")).[2]

During fact discovery, Wells Fargo produced certain documents concerning the risk levels of its customers (the "Risk Documents") during the high volatility event that took place on February 5–6, 2018 (the "Event"). (ECF No. 158). See Wells Fargo II, 2019 WL 3553290, at *2. Pursuant to the Confidentiality Stipulation and Protective Order in this case (ECF No. 142 (the "Confidentiality Order")), Wells Fargo redacted the names and financial information of other customers from the Risk Documents. (ECF No. 161 at 2).

During fact discovery, LJM sought discovery of, among other topics, the names and circumstances of other customers whose risk profiles Wells Fargo evaluated during the Event. (ECF Nos. 117 at 13–14; 147 at 25–30; 159 at 8–12). LJM has argued that "how others were treated in the same time frame" is "clearly relevant to how [it] was treated[.]" (ECF No. 117 at 14; see ECF No. 147 at 28). Wells Fargo opposed discovery requests concerning other customers as not "logically relevant," given that LJM's contract with Well Fargo did not contain a "most favored nation" clause as might have precluded Wells Fargo from treating other customers better than it did LJM. (ECF Nos. 117 at 8; 147 at 29). Wells Fargo also expressed concern about going down a "rabbit hole" of mini-trials comparing other customers' risk profiles to LJM's risk profile. (ECF No. 117 at 6–8).

The Court also expressed doubt as to the relevance of other customers' risk profiles to LJM's breach of contract counterclaim. (ECF Nos. 117 at 15–17; 147 at 27–28; 159 at 10–12).

---

[2] Wells Fargo acknowledges that commercial reasonableness is "an element of LJM's counterclaim." (ECF No. 161 at 2).

3

After directing the parties to continue to meet and confer to resolve their dispute over the Risk Documents' redactions, the Court permitted the parties to submit two exemplar documents for in camera review. (ECF Nos. 147 at 30; 157; 159 at 22). The first exemplar Risk Document is entitled "Wells Fargo Securities FCM - *Day Over Day Change* in Customer BAU Stress Tests," (the "Stress Tests Report"),[3] and the second exemplar document is entitled "GlobalRisk Firm Risk Report for Wells Fargo LLC," (the "Risk Report"). Wells Fargo redacted from both the Stress Tests Report and the Risk Report the names and calculations for customers other than LJM.

In the Motion, LJM seeks unredacted versions of the Stress Tests Reports and Risk Reports. (ECF No. 158 at 1). LJM argues that the Stress Tests Reports show that "LJM was not the only firm flagged by the WFS internal BAU stress testing." (Id.) Similarly, LJM contends that the Risk Reports show "that somewhere between four to five other [customers] were identified as high risks[.]" (Id.) LJM argues that the redacted information is relevant, any confidentiality concerns are mitigated by the Confidentiality Order, and the burden of un-redacting is minimal, such that "[t]here is simply no reason to maintain the redactions." (Id. at 2). LJM further argues that it needs unredacted versions of the Risk Documents to better prepare for and question witnesses during upcoming depositions. (Id. at 2; ECF No. 163 at 8).

Wells Fargo opposes the Motion principally on the ground that the redacted names and financial information for its other customers are not relevant and are properly redacted as confidential. (ECF Nos. 161 at 2; 163 at 9). Wells Fargo relies on the language of the Confidentiality Order that permits redaction "to prevent the harmful disclosure of nonparties'

---

[3] "FCM" refers to "futures commission merchant," and "BAU" refers to "business as usual." (ECF No. 158 at 1).

commercially sensitive, non-relevant financial information." (ECF No. 161 at 2 (quoting ECF No. 142 ¶ 8)). Wells Fargo argues that, for LJM's breach of contract counterclaim, "the relevant comparison is what did [it] do with LJM and what did the LJM contract allow or require or prohibit [it] from doing," and so "comparing LJM to what happened with other customers just doesn't establish or deny a breach of contract." (ECF No. 163 at 9–10; see ECF No. 161 at 2). To require removal of the redactions, Wells Fargo contends, "would invade the confidentiality of [its] other FCM customers' financial information, [and] would not be relevant without far more discovery into" those customers' trading strategies, risk profile, and other information. (ECF No. 161 at 2).

## II.  DISCUSSION

### A.  Legal Standard

#### 1.  Relevance

The Federal Rules of Civil Procedure establish the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Rule 26 gives a district court 'broad discretion . . . to impose limitations or conditions on [ ] discovery, . . . which extends to granting or denying motions to compel or for protective orders on 'just terms.'" Coty v. Cosmopolitan Cosmetics, Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018)).

"The weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral

determinations of relevancy.'" Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd., 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (quoting Cyris Jewels v. Casner, No. 12-CV-1895 (KAM) (SLT), 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016)).  Redactions are normally impermissible unless based on a legal privilege.  John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (citing In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig., No. 08 Civ. 333 (RJH) (DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009)).  Moreover, redactions are particularly impermissible where a confidentiality stipulation and order is in place.  Christine, 327 F.R.D. at 54 (citing Durling v. Papa John's Int'l, Inc., No. 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018)).

A court may nevertheless permit redactions on "a finding of 'good cause' based on a need 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Howell v. City of New York, No. 06-CV-6347 (ERK) (VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (quoting Fed. R. Civ. P. 26(c)(1)).  "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"  Dukes v. NYCERS, 331 F.R.D. 464, 473 (S.D.N.Y. 2019) (quoting Rep. of Turk. v. Christie's, Inc., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018)).  "The burden to show good cause falls on the party seeking a protective order."  Trellian Pty, Ltd v. adMarketplace, Inc., No. 19 Civ. 5939 (JPC) (SLC), 2021 WL 363965, at *3 (S.D.N.Y. Feb. 3, 2021); see Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011).  An example of redactions based on good cause is "commercially sensitive . . . portions" of documents that are "not relevant to the issues in" the case.  LPD N.Y., LLC v. Adidas Amer., Inc., No. 15-CV-6360 (MKB), 2020 WL 6784179, at *1 (E.D.N.Y. Nov. 17, 2020).

### 2. Breach of Contract

To prevail on its breach of contract counterclaim under New York law, LJM must establish "(1) the existence of an agreement, (2) adequate performance of the contract by [LJM], (3) breach of contract by [Wells Fargo], and (4) damages." <u>Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.</u>, 375 F.3d 168, 177 (2d Cir. 2004) (internal citation omitted).[4] Commercial reasonableness, in the breach of contract context, refers to "an objective standard of conduct," and requires the party asserting breach to "put forth evidence . . . that would constitute 'commercially reasonable' conduct" for an actor in the defendant's position. <u>MBIA Ins. Corp. v. Patriarch Ptrs. VIII, LLC</u>, 950 F. Supp. 2d 568, 617 (S.D.N.Y. 2013) (finding that plaintiff failed to "present evidence to define the parameters of" the commercially reasonable standard).

### B. Application

Wells Fargo does not—and cannot—argue that the Risk Documents it has produced are not relevant. Thus, the limited question before the Court is whether Wells Fargo has established good cause for its redactions to these documents.

Having reviewed the unredacted Stress Test Report and Risk Report, the Court concludes that Wells Fargo has shown good cause for redacting the names of its other customers, but <u>not</u> for redacting the lines of financial data, which, absent the associated customer name, do not reveal any commercially sensitive information about any individual customer, and which Wells Fargo agreed would be "less problematic" to disclose. (ECF No. 163 at 18). First, Wells Fargo

---

[4] LJM does not allege which state's law should apply to its counterclaim, but Judge Forrest applied New York law in <u>Wells Fargo I</u>, 2018 WL 4335512, at *3, and Chief Judge Swain did not apply a different state law in <u>Wells Fargo II</u>. <u>See</u> 2019 WL 3553290, at *5. The Court therefore presumes that New York law applies for purposes of the Motion.

produced its risk management policies and communications with LJM about the Event, and there has been no suggestion that those documents contain redactions, let alone any that are improper. (ECF Nos. 117 at 6; 163 at 13 (LJM's counsel acknowledging that they "have the information about what was going on with LJM")). Such documents go to the heart of LJM's breach of contract counterclaim: whether Wells Fargo acted in a commercially unreasonable manner when it terminated the Agreement. See Wells Fargo I, 2018 WL 4335512, at *2 (discussing Wells Fargo's termination of the Agreement during the Event).

Second, LJM has not shown that the names of the other customers whose risk Wells Fargo evaluated during the Event are relevant to the breach of contract counterclaim. See, e.g., Trellian, 2021 WL 363965, at *4 (finding good cause to redact "other clients' names"); LPD N.Y., 2020 WL 6784179, at *1 (permitting redaction of "competitively sensitive portions of . . . licensing agreements"). LJM has not pointed to any authority holding that the way Wells Fargo analyzed and treated any other customer during the Event bears any relevance to whether Wells Fargo's analysis and treatment of LJM was commercially reasonable, nor has the Court's own research found any. Instead, LJM has repeatedly relied only on the ipse dixit that the names are "clearly relevant." (ECF Nos. 117 at 14; 163 at 4). The Court therefore stands by its prior conclusion that the names themselves are not relevant. (ECF Nos. 147 at 28; 159 at 12).

Third, given the Court's repeated finding that the names of Wells Fargo's other customers are not relevant, simply telling Wells Fargo to rely on the Confidentiality Order "does not eliminate the risk of harm from disclosure of its commercially sensitive information." Trellian, 2021 WL 363965, at *4; see Grand River Enter. Six Nations, Ltd v. King, No. 02 Civ. 5068 (JFK), 2009 WL 222160, at *3 (S.D.N.Y. Jan. 30, 2009) (declining to require removal of redactions where

it was "understandable that the [producing party] does not even want to risk disclosure of [sensitive] information, despite the existence of a protective order") (internal citation omitted). (See ECF No. 163 at 15 (Wells Fargo asserting obligation to other customers "to not disclose their names for no reason at all")).

Finally, to the extent that LJM has concerns about confusion at depositions (ECF Nos. 147 at 28; 163 at 13), the parties can attach an anonymous name—Customer A, Customer B, etc.—to facilitate questioning about a financial data on one of the Risk Documents.  LJM acknowledged that such an anonymizing procedure would be acceptable.  (ECF No. 163 at 17).

Accordingly, Wells Fargo is permitted to maintain the redactions of the names of its other customers, but shall remove the redactions of the financial data from the Risk Documents consistent with this Opinion and Order.

### III. CONCLUSION

For the reasons set forth above, LJM's Motion is GRANTED IN PART and DENIED IN PART, and Wells Fargo shall re-produce the Risk Documents with the redactions of the financial data removed by **March 16, 2022**.

Dated:   New York, New York    SO ORDERED.
         March 2, 2022

_____
**SARAH L. CAVE**
**United States Magistrate Judge**